IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| ALISHA WILLIAMS | § | |
| | § | |
| *Plaintiff* | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 1:22-CV-00554 |
| | § | JUDGE MICHAEL J. TRUNCALE |
| TEKOA CHARTER SCHOOL, INC. | § | |
| | § | |
| *Defendant.* | § | |

## ORDER AND OPINION GRANTING DEFENDANT'S MOTION TO DISMISS

Before the Court is Defendant Tekoa Charter School, Inc.'s ("Tekoa") Motion to Dismiss [Dkt. 22]. In her Complaint, Alisha Williams asserts a cause of action against Tekoa for alleged violations of the Americans with Disabilities Act ("ADA"). Tekoa moves to dismiss the Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). On July 29, 2024, this Court ordered Ms. Williams to respond to Tekoa's motion on or before August 9, 2024. [Dkt. 30]. Ms. Williams timely filed her response on that day. [Dkt. 31]. For the reasons set forth below, the Court **GRANTS** Tekoa's Motion to Dismiss under Rule 12(b)(1) and **DENIES AS MOOT** Tekoa's Motion to Dismiss under Rule 12(b)(6).

### I.   BACKGROUND[1]

This is an ADA case. [Dkt. 1 at ¶ 7]. Ms. Williams, a resident of Jefferson County, Texas, worked at Tekoa as a Pre-K 3 educator from August 2017 to January 6, 2021. *Id.* at ¶ 10. Tekoa is an open-enrollment charter school that is licensed by the State of Texas and does business as a non-profit. *Id.* at ¶ 4.[2]

---

[1] The Complaint alleges the following facts.

[2] Tekoa indicates in its Motion to Dismiss that Ms. Williams had a contract to work at Tekoa from Septemper 3, 2020, to June 18, 2021. [Dkt. 22 at 3].

During her tenure with Tekoa, Ms. Williams received superior performance evaluations and was promoted twice. *Id.* at ¶ 11. However, beginning in or around October 2020, and continuing through January 6, 2021, Ms. Williams was allegedly subjected to discrimination based on disability in the form of harassment and a hostile work environment. *Id.* at ¶ 8.

Ms. Williams alleges that in or around October 2020, she was harassed by her supervisor and manager by being transferred from school to school without any explanation. *Id.* at ¶ 12. This alleged harassment occurred for no other reason but for Ms. Williams's known disability. *Id.* In January 2021, Ms. Williams was instructed to go home because her shoes "did not meet the required standard dress code."[3] *Id.* at ¶ 13. Ms. Williams had worn the same shoes before and was neither harassed nor instructed to go home for a dress code violation. *Id.* Despite this fact, Ms. Williams left campus as instructed.[4] *Id.* After leaving the campus, Ms. Williams experienced a mental breakdown which required her to visit her doctor.[5] *Id.*

On May 28, 2021, Ms. Williams filed a charge of employment discrimination against Tekoa with the Dallas District Office of the Equal Employment Opportunity Commission ("EEOC"). *Id.* at ¶ 5. The EEOC issued a "Notice of Right to Sue" concerning the charge of discrimination on August 16, 2022 [*Id.* at ¶ 6], and Ms. Williams filed her Complaint in this Court on November 11, 2022. [Dkt. 1]. Plaintiff seeks statutory damages, back pay and front pay, and/or lost wages and benefits in the past and future

---

[3] Tekoa indicates in its Motion to Dismiss that Ms. Williams was wearing tennis shoes and that there were two dress code incidents: the first occurring on January 4, 2021, and the second occurring on January 6, 2021. *See* [Dkt. 22 at 3].

[4] Tekoa indicates in its Motion to Dismiss that Ms. Williams left campus at 8:29 AM on January 6, 2021. *See* [Dkt. 22 at 3].

[5] On a prior occasion, Tekoa deceptively told Ms. Williams that her doctor had filled out her disability paperwork incorrectly. [Dkt. 1 ¶ 13]. Additionally, Tekoa had previously written up Ms. Williams on a day her doctor advised her to stay home because of her disability. *Id.*

for Tekoa's discriminatory acts.[6] *Id.* at ¶ 19. Tekoa filed its Motion to Dismiss in this Court on June 5, 2024. Tekoa seeks dismissal of Ms. Williams's claim pursuant to Rule 12(b)(1) and Rule 12(b)(6) of the Federal Rules of Civil Procedure.[7]

## II. LEGAL STANDARDS

A motion to dismiss under Rule 12(b)(1) challenges a court's subject-matter jurisdiction. *See* FED. R. CIV. P. 12(b)(1). A district court must dismiss a case for lack of subject-matter jurisdiction "when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (per curiam). "When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *See id.* (citing *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir.

---

[6] There are parts of Ms. Williams's Complaint that "namedrop" equitable relief. *See* [Dkt. 1 at ¶¶ 7, 19]. However, this Court construes Ms. Williams's claim as one for monetary damages for several reasons. First, section five of the Complaint contains the following header above paragraph nineteen: "DAMAGES." *See id.* at ¶ 19. This suggests that monetary damages are the thrust of the Complaint. Second, while Ms. Williams precisely outlined the monetary relief she desired, she did not do the same for equitable relief. *See id.* Lastly, since Ms. Williams is suing Tekoa and not a state official, her claim falls outside the scope of *Ex parte Young* for purposes of sovereign immunity, even if she is pursuing equitable relief. *See Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland*, 535 U.S. 635, 645 (2002).

[7] Tekoa seeks a Rule 12(b)(6) dismissal of Ms. Williams's claims since she fails to establish a prima facie case of discrimination under the ADA. *See* [Dkt. 22 at 9]. Tekoa also seeks to dismiss Ms. Williams's claim because she allegedly filed her Complaint outside the 90-day limitations period set forth in the EEOC Right-to-Sue Letter. *See id.* at 10. Although Tekoa's first ground for dismissal was positioned under a heading that mentioned "fails to state a claim upon which relief can be granted" [*see id.* at 9], the second ground was placed under an independent heading without this language. *See id.* at 10. Despite this, courts treat the 90-day time-bar as a reason to dismiss Title VII claims under Rule 12(b)(6). *See Harris v. Boyd Tunica, Inc.*, 628 F.3d 237, 239 (5th Cir. 2010). For the reasons explained below, Tekoa's grounds for dismissal under Rule 12(b)(6) will not be addressed in this Order.

1977) (per curiam)). "If the court determines *at any time* that it lacks subject-matter jurisdiction, the court must dismiss the action." FED. R. CIV. P. 12(h)(3) (emphasis added).[8]

Tekoa seeks dismissal of Ms. Williams's claim under Rule 12(b)(1) on sovereign immunity grounds. [Dkt. 22 at 5–9]. "[When] sovereign immunity deprives the court of jurisdiction, the claims barred by sovereign immunity can be dismissed only under Rule 12(b)(1) and not with prejudice." *See Warnock v. Pecos Cnty., Tex.*, 88 F.3d 341, 343 (5th Cir. 1996).

### III.   SOVEREIGN IMMUNITY

It is well recognized that "[f]ederal court jurisdiction is limited by the Eleventh Amendment and the principle of sovereign immunity that it embodies." *See Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 72–73 (1996). The Eleventh Amendment provides:

> The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. CONST. amend. XI. Courts have construed the Eleventh Amendment to mean that "a non-consenting State may not be sued in federal court by private individuals, including its own citizens." *Vogt v. Bd. of Comm'rs of Orleans Levee Dist.*, 294 F.3d 684, 688 (5th Cir. 2002) (quoting *Bd. of Trustees of the Univ. of Alabama v. Garrett*, 531 U.S. 356, 363 (2001)). Thus, "absent waiver by the State or valid

---

[8] In her Response to Tekoa's Motion to Dismiss, Ms. Williams argues that Tekoa's motion is untimely because it was not filed before Tekoa's Answer. *See* [Dkt. 31 at 2]. In fact, Tekoa's Motion to Dismiss was filed 469 days *after* its Answer. *See* [Dkt. 6]; [Dkt. 22]. Rule 12(b) specifies that "a motion asserting any of these defenses [including lack of subject-matter jurisdiction and failure to state a claim upon which relief can be granted] *must be made before pleading* if a responsive pleading is allowed." *See* FED R. CIV. P. 12(b) (emphasis added). Although Tekoa's late filing of its Motion to Dismiss transgresses Rule 12(b), this does *not* shut the door on Tekoa's subject-matter jurisdiction argument. *See* FED. R. CIV. P. 12(h)(3). Regardless of the diligence of the parties (or the lack thereof), this Court must dismiss the case if it determines, at any time, that it lacks subject matter jurisdiction. *See id.* This comports with the first principle that "federal courts are courts of limited jurisdiction." *See Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998) (citation omitted).

congressional override, the Eleventh Amendment bars a damages action against a State in federal court." *See Kentucky v. Graham*, 473 U.S. 159, 169 (1985).

This Court must address whether Ms. Williams's suit against Tekoa is a suit against the State of Texas for the purposes of the Eleventh Amendment. "Even in cases where the State itself is not a named defendant, the State's Eleventh Amendment immunity will extend to any state agency or other political entity that is deemed the 'alter ego' or an 'arm' of the State." *Vogt*, 294 F.3d at 688–89 (quoting *Regents of the Univ. of California v. Doe*, 519 U.S. 425, 429 (1997)). The Fifth Circuit employs the following six-factor test to determine whether an entity qualifies as an arm of the state as a matter of law:

> (1) Whether the state statutes and case law view the agency as an arm of the state; (2) The source of the entity's funding; (3) The entity's degree of local autonomy; (4) Whether the entity is concerned primarily with local, as opposed to statewide, problems; (5) Whether the entity has the authority to sue and be sued in its own name; and (6) Whether the entity has the right to hold and use property.

*Matter of Entrust Energy, Inc.*, 101 F.4th 369, 383 (5th Cir. 2024) (citing *Clark v. Tarrant Cty. Tex.*, 798 F.2d 736, 744–45 (5th Cir. 1986)).[9] Though no factor is dispositive, the second factor carries the most weight. *See id.* (citation omitted). If Tekoa is an arm of the State of Texas, then sovereign immunity bars the present suit because (1) neither Tekoa nor the State of Texas has consented to this suit and (2) Title I of the ADA does not abrogate State sovereign immunity under the Eleventh Amendment.[10] *See Garrett*, 531 U.S. at 374, 374 n.9 (explaining other "avenues of redress" for persons with disabilities, including state law claims and private suits under Title I seeking injunctive relief); *see also Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318, 326 (5th Cir. 2002) (stating "Congress did not abrogate the States' sovereign immunity in enacting Title I of the ADA.").

---

[9] This Court will refer to the abovementioned factors as the "*Clark* factors."

[10] Title I of the ADA covers employment discrimination suits like the present one. *See* 42 U.S.C. § 12112 ("No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.").

### a. Whether State Statutes and Case Law View Tekoa as an Arm of the State

The First *Clark* factor favors immunity. First, Texas statutes suggest that Tekoa is an arm of the State of Texas. Tekoa is an open-enrollment charter school. [Dkt. 22 at 3]. Under the Texas Education Code, "[a]n open-enrollment charter school is part of the public school system of this state." Tex. Educ. Code Ann. § 12.105. Further,

> An open-enrollment charter school *is a governmental unit* as defined by Section 101.001, Civil Practice and Remedies Code, and is subject to liability only as provided by Chapter 101, Civil Practice and Remedies Code, and only in the manner that liability is provided by that chapter *for a school district*.

*Id.* § 12.1056(b) (emphasis added). Texas case law similarly indicates that Tekoa is an arm of the State of Texas. *See, e.g.*, *El Paso Educ. Initiative, Inc. v. Amex Properties, LLC*, 602 S.W.3d 521, 529 (Tex. 2020) (concluding, in the state governmental immunity context, that "open-enrollment charter schools act as an arm of the State government."); *LTTS Charter Sch., Inc. v. C2 Constr., Inc.*, 342 S.W.3d 73, 76 (Tex. 2011) ("Open-enrollment charter schools . . . are indisputably part of the Texas public-education system."); *Tex. Educ. Agency v. Acad. of Careers & Techs., Inc.*, 499 S.W.3d 130, 135 (Tex. App.—Austin 2016, no pet.) ("Charter schools are creatures of statute that are an integral part of Texas's public-education system and may be considered governmental units."). For these reasons, the first *Clark* factor favors Tekoa's immunity.

### b. The Source of Tekoa's Funding

The second *Clark* factor slightly favors Tekoa's immunity. Since the second factor is the most significant in the analysis, this adds weight to Tekoa's immunity argument overall. *See Entrust Energy, Inc.*, 101 F.4th at 383.

In addition to the mere existence of state funding, the second *Clark* factor considers "both the state's liability for a judgment rendered against the [entity] and the state's liability for general debts and

obligations." *See Perez*, 307 F.3d at 328. Courts examine whether state funding is "earmarked for any particular purposes to determine whether a judgment likely would be paid with state funds." *See id.*

The precise amount of Tekoa's state funding is unclear. In its Motion to Dismiss, Tekoa indicated that they are "*primarily* funded from the State of Texas funds based upon student enrollment" [Dkt. 22 at 3] (emphasis added), but they do not provide a percentage or amount for the State funds they receive.[11] *See* [Dkt. 22-1]; [Dkt. 22-2]. However, State funding undoubtedly exists and is likely substantial. The Texas Education Code specifies that open-enrollment charter schools receive State funding based on daily attendance. *See* Tex. Educ. Code Ann. § 12.106(a). The Texas Supreme Court has emphasized that open-enrollment charter schools receive substantial amounts of State funding. *See El Paso Educ. Initiative, Inc.*, 602 S.W.3d at 529 ("These schools are accountable to State government through oversight of their charters and through the receipt of *substantial* public funding.") (emphasis added). Furthermore, open-enrollment charter schools are prohibited from raising funds by levying taxes; this is additional evidence that State funds are the lifeblood of Tekoa. *See* Tex. Educ. Code Ann. § 12.102(4); *see Anderson v. Red River Waterway Comm'n*, 231 F.3d 211, 214 (5th Cir. 2000) (finding no sovereign immunity because the waterway commission could raise funds through its statutory taxing and bonding authority).

Nothing in the Texas Education Code suggests that the State of Texas is obligated to indemnify open-enrollment charter schools for judgments or otherwise assume liability for their debts and obligations. However, a judgment would likely be paid with State funds because State funding for open-

---

[11] Although it is also unclear whether Tekoa is *solely* funded by the State of Texas, the Fifth Circuit determined that this is not required by the second *Clark* factor; State funds simply need to make up a substantial portion of the entity's budget. *See Perez*, 307 F.3d at 329 ("Though the state is not the sole source of funding for the Centers, we are persuaded that state funding comprises the 'lion's share' of the Centers' budgets.").

enrollment charter schools, which comprises a substantial portion of their budgets, is earmarked for particular purposes:

> Funds received under Section 12.106 . . . by a charter holder:
> (1) are considered to be public funds for all purposes under state law;
> (2) are held in trust by the charter holder *for the benefit of the students* of the open-enrollment charter school;
> (3) may be used *only for a purpose for which a school may use local funds under Section 45.105(c)*;
> . . .
> (5) [and] *may not*:
>> (A) be pledged or used to secure loans or bonds for any other organization, including a non-charter operation or out-of-state operation conducted by the charter holder or a related party, as defined by commissioner rule adopted under Section 12.1166; or
>> (B) be used to support an operation or activity not related to the educational activities of the charter holder.

Tex. Educ. Code Ann. § 12.107(a) (emphasis added); *see Perez*, 307 F.3d at 328. For this reason, a judgment against an open-enrollment charter school would function as a withdrawal from the State's account. *See Perez*, 307 F.3d at 329; *see also El Paso Educ. Initiative, Inc.*, 602 S.W.3d at 530 (in the state governmental immunity context, explaining that "diverting charter school funds to defend lawsuits and pay judgments affects the State's provision of public education and reallocates taxpayer dollars from the legislature's designated purpose.").

### c. Tekoa's Degree of Local Autonomy

The third *Clark* factor slightly favors Tekoa's immunity. The third *Clark* factor focuses on whether Tekoa exercises local autonomy or whether it is primarily controlled by the State of Texas. *See Entrust Energy, Inc.*, 101 F.4th at 383. Open-enrollment charter schools are subject to State requirements to report misconduct and the Texas Education Commissioner's authority to inspect records to ensure compliance with those reporting requirements. Tex. Educ. Code Ann. § 21.006. Tekoa's accreditation is controlled by the Texas Education Agency, which issues findings regarding their "academic accountability" and "financial ratings." [Dkt. 22-2 at 2–3]. Texas's Commissioner of Education can also

8

revoke Tekoa's charter for any of several reasons, including financial mismanagement. Tex. Educ. Code Ann. § 12.1162(a)(1)–(3). As Texas courts have noted, the State has "unfettered discretion" over a charter school. *Tex. Educ. Agency v. Am. YouthWorks, Inc.*, 496 S.W.3d 244, 261–62 (Tex. App.—Austin 2016), *aff'd sub nom.*, *Honors Acad., Inc. v. Tex. Educ. Agency*, 555 S.W.3d 54 (Tex. 2018). Although open-enrollment charter schools undeniably possess some autonomy over discretionary functions,[12] they are also subject to substantial state supervision.

### d.  Tekoa's Concern with Local or Statewide Problems

The fourth *Clark* factor leans slightly against Tekoa's immunity. The fourth *Clark* factor concerns whether Tekoa focuses primarily on local or statewide issues. *See Pendergrass v. Greater New Orleans Expressway Comm'n*, 144 F.3d 342, 347 (5th Cir. 1998) (focusing on "whether the entity acts for the benefit and welfare of the state as a whole or for the special advantage of local inhabitants") (citation omitted).

In *Perez*, the Fifth Circuit determined that education service centers satisfied the fourth *Clark* factor. *See* 307 F.3d at 330–31. The centers were "accountable to the state Commissioner of Education, . . . not to local voters." *Id.* at 330. Additionally, the centers "collect[ed] and deliver[ed] educational resources throughout the state, not just in one area." *See id.* at 331.

In the present case, Tekoa is accountable to the Commissioner like the education service centers were in *Perez*. *See, e.g.*, Tex. Educ. Code Ann. § 12.1162(a) (explaining the grounds upon which the Commissioner may terminate a charter); *id.* § 12.1163 (explaining the Commisioner's authority to audit open-enrollment charter schools); *id.* § 12.118 (explaining the annual evaluation process for open-enrollment charter schools); *id.* § 12.101(b) (specifying that "the commissioner . . . may grant a charter

---

[12] *See* Tex. Educ. Code Ann. § 12.102(3) ("An open-enrollment charter school: . . . *retains authority* to operate under the charter to the extent authorized under Sections 12.1141 and 12.115 and Chapter 39A[.]") (emphasis added).

for an open-enrollment charter school only to an applicant that meets any financial, governing, educational, and operational standards adopted by the commissioner under this subchapter . . . .").

However, Tekoa is not widely distributed across Texas and appears tailored to local community interests. *See* [Dkt. 22-2 at 2]. Tekoa was created "to give parents and students in [the] South Jefferson County, Texas Community an opportunity to have a choice in public education." *See id.* Tekoa only has three campuses and there is no indication that any of them lie outside the South Jefferson County area. *See id.* Tekoa's localized mission leans against immunity.

### e. Tekoa's Authority to Sue and be Sued in its Own Name

The fifth *Clark* factor slightly favors immunity. The Texas Education Code grants *school districts* the right to sue and be sued, Tex. Educ. Code Ann. § 11.151(a), but it does not mention open-enrollment charter schools. In nearly identical circumstances, the Fifth Circuit held that the fifth *Clark* factor "slightly favors immunity." *See Perez*, 307 F.3d at 331. The same conclusion should apply in this case.

### f. Tekoa's Right to Hold and Use Property

The final *Clark* factor favors immunity. Under Texas law, all property purchased with funds received by a charter holder (1) "is considered to be public property for all purposes under state law," (2) "is property of [Texas] held in trust by the charter holder," and (3) "may be used only for a purpose for which a school district may use school district property." Tex. Educ. Code Ann. § 12.128(a)(1)–(3). Although the Texas Education Code was amended to explain that a charter holder "holds title to any property . . . and may exercise complete control over the property," *id.* § 12.128(b-1), that language fleshes out the scope of the trust over property used by the charter schools as opposed to vesting unrestricted private rights in the property. *See Honors Acad., Inc.*, 555 S.W.3d at 63 (finding that the Texas Legislature "has [not] . . . created vested private-property rights in the creation of the charter school system").

Notably, the shuttering of an open-enrollment charter school requires the Commissioner to take possession of and assume control over the property used at the school. *See* Tex. Educ. Code Ann. § 12.128(b-1), (c). The Commissioner thus has a firm grip on property held by Tekoa. *See Premier Learning Acad., Inc. v. Tex. Educ. Agency*, 521 S.W.3d 439, 444 (Tex. App.—Austin 2017, pet. denied) ("The Education Code gives the TEA commissioner broad authority over FSP funds and the public property purchased or leased with those funds.").

Since five of the six *Clark* factors (including the heavily weighted second factor) at least slightly favor Tekoa's immunity and only one cuts against Tekoa, the Court concludes that Tekoa is an arm of the State of Texas for the purposes of Eleventh Amendment immunity. Since Ms. Williams seeks to recover monetary damages from Tekoa [Dkt. 1 at ¶ 19], her claim is barred. *See Graham*, 473 U.S. at 169.

## IV.   CONCLUSION

It is therefore **ORDERED** that Defendant Tekoa Charter School, Inc.'s Motion to Dismiss under Rule 12(b)(1) [Dkt. 22 at 4–9] is hereby **GRANTED**. Alisha Williams's claim under 42 U.S.C. §§ 12101 *et seq.* is hereby **DISMISSED WITHOUT PREJUDICE**.

It is **FURTHER ORDERED** that Defendant Tekoa Charter School, Inc.'s Motion to Dismiss under Rule 12(b)(6) [Dkt. 22 at 9–11] is **DENIED AS MOOT**.

**SIGNED this 23rd day of August, 2024.**

Michael J. Truncale
United States District Judge